DECISION
Before the Court are (i) Plaintiff's Motion for Summary Judgment as to counts V and VI of the Verified Complaint, and (ii) Defendant Gilbane, Inc.'s Cross Motion for Summary Judgment as to the same counts pursuant to Super R. Civ. P. 56. Counts V and VI allege Wrongful Payment/Impairment of a Security Interest and Wrongful Payment/Conversion respectively. Also before the Court is Defendant Gilbane, Inc.'s Motion to Amend its Answer pursuant to Super R. Civ. P. 15.
 I Facts and Travel
Due to the multiple and lengthy memoranda submitted in connection with the present motions, the Court will introduce the pertinent facts briefly, reserving specific facts to be addressed where necessary. The Plaintiff herein is Rockland Credit Finance, LLC ("Rockland"), which is a Maryland based factoring company.[1] The Defendant involved in the instant motions *Page 2 
is Gilbane, Inc. ("Gilbane"). Fenestration Architectural Products, LLC ("Fenestration"), also a defendant in this litigation, contracted to perform construction work for Gilbane in connection with the G-Tech Building Project ("Project").
To secure additional funding for its projects, Fenestration initiated the factoring agreement around which this litigation is centered. On October 3, 2005, Rockland and Fenestration entered into a Master Factoring Agreement ("MFA") whereby Rockland purchased certain accounts receivable of Fenestration. (Compl. ¶ 8.) In addition to the specific accounts purchased, the MFA granted to Rockland a security interest in all of Fenestration's accounts, "whether or not specifically sold to [Rockland]," including the Gilbane receivables. (Compl. ¶ 11, Ex. A at 4.) Rockland's security interest in these accounts was perfected upon the proper filing of a UCC Financing Statement with the R.I. Secretary of State on October 11, 2005.
Pursuant to the MFA, Fenestration and Rockland executed several "Assignment and Transfer of Accounts Receivable" documents . . ."whereby Fenestration assigned to Rockland the account receivable[s]" owed to it by Draper Kramer, Inc. (D K) in connection with the Parris Landing Project in Charlestown, Massachusetts ("PL Project"). (Compl. ¶¶ 14-16.) As of February 1, 2006, the D K receivables remained unpaid prompting Rockland to notify Gilbane of its security interest in Fenestration's accounts. (Compl. ¶¶ 17-18.) In a letter sent via facsimile on February 10, 2006, Rockland informed Gilbane that Fenestration had assigned its accounts to Rockland. (Compl. ¶ 18, Ex. I.) Attached to this correspondence was a letter from Fenestration *Page 3 
to Gilbane "authoriz[ing] and advis[ing] [Gilbane] to remit payment of all future invoices due to Fenestration Architectural Products, LLC directly to Rockland and [to] continue to do so until notified otherwise by Rockland." (Compl. ¶ 18, Ex. I.) Subsequent to receipt of this communication, Gilbane delivered to Fenestration payments in excess of $350,000 on its account. (Compl. ¶ 20.)
Pursuant to Super. R. Civ. P. 56, Gilbane and Rockland each now move this Court for summary judgment on Counts V and VI of Plaintiff's verified Complaint. In its Motion, Gilbane for the first time raises the affirmative defense of recoupment. Gilbane also seeks leave to amend its answer to Rockland's verified complaint to include this defense pursuant to Rule 15.
 II Standard of Review
Motion to Amend
Under Super R. Civ. P. 15, this Court has the discretion to grant leave and allow a party to amend its answer. In fact, such amendments are granted "freely . . . when justice so requires." (Super. R. Civ. P. 15.) "Despite the fact that . . . proposed amendments under [Rule 15] are permitted with liberality, the final decision whether to allow amendments rests with the discretion of the trial justice." Order of St.Benedict v. Gordon, 417 A.2d 881, 883 (R.I. 1980) (citing Kenney v.Providence Gas Co., 372 A.2d 510 (R.I. 1977)). The issue of prejudice to the non-moving party is central in determining whether an amendment should be granted. See Faerber v. Cavanagh, 568 A.2d 326 (R.I. 1990). The burden of establishing prejudice, however, falls on the non-moving party. See Wachsberger v. Pepper, 583 A.2d 77 (R.I. 1990).
Motion for Summary Judgment *Page 4 
"Summary judgment is a proceeding in which the proponent must demonstrate by affidavits, depositions, pleadings and other documentary matter . . . that he or she is entitled to judgment as a matter of law and that there are no genuine issues of material fact." Palmisciano v.Burrillville Racing Ass'n, 603 A.2d 317, 320 (R.I. 1992) (citingSteinberg v. State, 427 A.2d 338 (R.I. 1981); Ludwig v. Kowal,419 A.2d 297 (R.I. 1980)); Super. Ct. R. Civ. P. 56(c). During a summary judgment proceeding "the court does not pass upon the weight or credibility of the evidence but must consider the affidavits and other pleadings in a light most favorable to the party opposing the motion." Lennon v.MacGregor, 423 A.2d 820 (R.I. 1980).
Moreover, "the trial justice must look for factual issues, not determine them. The justice's only function is to determine whether there are any issues involving material facts." Steinberg v. State,427 A.2d 338, 340 (R.I. 1981). The Court's purpose during the summary judgment proceeding is issue finding, not issue determination.Indus. Nat'l Bank v. Peloso, 397 A.2d 1312, 1313 (R.I. 1979) (citingO'Connor v. McKanna, 359 A.2d 350 (R.I. 1976); Slefkin v.Tarkomian, 238 A.2d 742 (R.I. 1968)). Thus, the only task of a trial justice in ruling on a summary judgment motion is to determine whether there is a genuine issue concerning any material fact. Rhode IslandHosp. Trust Nat'l Bank v. Boiteau, 376 A.2d 323 (R.I. 1977).
"When an examination of the pleadings, affidavits, admissions, answers to interrogatories and other similar matters, viewed in the light most favorable to the party opposing the motion, reveals no such issue, the suit is ripe for summary judgment." Id.
 III Wrongful Payment/Impairment of a Security Interest and Wrongful Payment/Conversion Claims *Page 5 
In support of its Motion for Summary Judgment, the Plaintiff submitted excerpts of the record, which it claims entitles it to summary judgment as to Counts V and VI of its verified complaint. The wrongful payment claims center around the payments tendered to Fenestration by Gilbane subsequent to communications by Rockland, which they argue constituted sufficient notice of an assignment under the applicable R.I. statutes. In response, Gilbane also moves this Court for summary judgment on these counts, raising for the first time the defense of recoupment as a bar to Plaintiff's wrongful payment claims. The Court will first address the issue of notification of an assignment under the R.I. Uniform Commercial Code as it pertains to this matter. Then, if the Court finds that notification was valid, the Court will determine whether the payment made was in fact "wrongful". Finally, if necessary, the Court will determine whether the wrongful payment precludes the Defendant's recoupment defense at this juncture.
A. Notification
Under G.L. 1956 § 6A-9-406(b) of the R.I.G.L, notification is ineffective:
 (b). . . .
 (1) If it does not reasonably identify the rights assigned;
 (2) To the extent that an agreement between an account debtor and a seller of a payment intangible limits the account debtor's duty to pay a person other than the seller and the limitation is effective under law other than this chapter; or
 (3) At the option of an account debtor, if the notification notifies the account debtor to make less than the full amount of any installment or other periodic payment to the assignee, even if:
 (i) Only a portion of the account, chattel paper, or payment intangible has been assigned to that assignee;
 (ii) A portion has been assigned to another assignee; or
 (iii) The account debtor knows that the assignment to that assignee is limited. *Page 6 
In the case at bar, Rockland communicated directly with Gilbane via facsimile and attached therein a letter from Fenestration directing that payments by Gilbane to Fenestration be sent instead to Rockland "until notified otherwise by Rockland." The letter was dated February 10, 2006 and written on Fenestration letterhead. Receipt and content of this communication is not in dispute. The efficacy, however, is determinative of the instant motions.
Approximately two weeks after this facsimile was received, Mr. Elsawabi, President of Fenestration, notified Mr. Driscoll, of Gilbane, that there was no need to process the assignment because Fenestration no longer intended to secure loans from Rockland. This conversation took place on February 22, 2006, and Gilbane took no steps towards confirming this assertion with Rockland. On February 23, 2006, Gilbane made a wire transfer directly to Fenestration in the amount of $143,278.83, which was intended to satisfy the January requisition previously submitted by Fenestration. Thereafter, on March 27, 2006, Fenestration received from Gilbane an additional $207,987.51 in satisfaction of the February requisition. The remaining balance of each of these invoices was sent directly to suppliers in joint-check form.
1. Assignment of Full Amount
Gilbane asserts in its Motion for Summary Judgment that Rockland's notice was insufficient because it demanded less than the full amount of the payment due to Fenestration. Section 6A-9-406(b)(3) states that notification is ineffective if it "notifies the account debtor to make less than the full amount of any installment or other periodic payment to the assignee." Additionally, the comments espouse a clear intent to allow the account debtor to treat the notification as ineffective, ignore the notice, and discharge the assigned obligation by paying the assignor. See § 6A-9-406. While it has become more common in financing transactions to assign interests in a single obligation to more than one assignee, the code clearly seeks to shield *Page 7 
account debtors from the need to make numerous payments to satisfy one debt. Specifically the comments to § 6A-9-406 state that "[r]equiring an account debtor that owes a single obligation to make multiple payments to multiple assignees would be unnecessarily burdensome."
Here, Fenestration's account with Gilbane was subject to joint-check agreements with various suppliers and manufacturers. Pursuant to these agreements, Gilbane would make payments on its invoices from Fenestration in the form of joint-checks issued bearing both Fenestrations's name, as well as that of the material supplier to which Fenestration owed money. Joint-check agreements are common in the construction industry. See Marandola v. Marandola Mech., Inc., 2004 R.I. Super LEXIS 115, *5-6 (2004). In a joint-check arrangement,
 payment for services rendered in the construction industry is . . . made by a check payable jointly to the subcontractor who performed such services and his materialman. Each payee must endorse the check before it may be cashed. Since the check pays for both labor and materials, it is the usual practice that the subcontractor take[s] part of the proceeds and that the materialman retain the balance.
See id. (citing Rodney Moss, Joint Checks: Practices in the ConstructionIndustry, J. of the State Bar of CA, 242 (1968)).
With the above-mentioned code language, as well as the intent of its drafters in mind, Rockland points out that the assignment herein does not impose a burden upon Gilbane to pay multiple assignees, rather it merely directs that those payments due and owing to Fenestration be sent instead to Rockland. Rockland cannot demand any more than what Fenestration would itself be entitled to under the joint-check agreements already in place.[2] In fact, the code favors an interpretation that recognizes common practices such as joint-check agreements. An assignor has the authority to assign the full amount of any and all installments due to it under the contract. *Page 8 
A complete reading of § 6A-9-406 makes clear, therefore, that this amount is the payment that the account debtor would ordinarily pay to the obligee in the absence of the assignment. See § 6A-9-406 cmt. 3.
In the instant matter, Rockland delivered notification and instructions regarding the invoices due to Fenestration, receipt of which is not disputed. The notice of assignment instructed Gilbane to "remit all present and future invoices due to Fenestration Architectural Products, LLC directly to Rockland." There is no basis upon which to determine that this instruction was for anything less than the full amount of the installment due to Fenestration. The assignment did not require payments of the amount owed to Fenestration to multiple assignees; rather that amount was to be paid in full to Rockland. The amounts owed to suppliers under joint-check agreements were not to be affected and this assignment would not cause any unnecessary burden for Gilbane as contemplated under the code.
The existence of joint-check agreements does not frustrate the effectiveness of an assignment where the account debtor is not called upon to make more payments than it would have otherwise been required to make. This Court has previously recognized the commonality of joint-check agreements in the construction industry and the need to allow such practices to encourage the expansion of commercial practices through similar financing arrangements. See Marandola, 2004 R.I. Super LEXIS 115 at *5-6. The apparent policy reasons underlying §6A-9-406(b)(3) are not implicated in the case at bar. The facts at hand do not require an account debtor owing a single obligation to suddenly be required to make multiple payments to multiple assignees. Gilbane was merely directed to substitute Rockland for Fenestration and failed to do so when notified. *Page 9 
Because the notice of assignment was for the full amount due to Fenestration, Gilbane did not have the option to ignore the assignment and treat it as ineffective.
 2. Identification of Rights Assigned
Gilbane next asserts that the notification must fail under §6A-9-406(b)(1) as it was vague and misleading, thereby failing to reasonably identify the rights assigned as required by the code. Once notification is received, however, the account debtor is required to seek proof or clarification of the assignment as needed. Section6A-9-406(c). Gilbane also asserts that the notification it received is ineffective on its face because it is vague and misleading creating a question of fact. Specifically, it is Gilbane's assertion that the two letters sent via facsimile actually contradict one another. The first, from Rockland, states that "[Fenestration] has assigned their accounts receivable to [Rockland]." Whereas, the second refers to receivables that had been purchased by Rockland. Gilbane's position is based on the argument that Rockland had not specifically purchased this set of receivables; rather, it held a security interest in them, and that the inconsistency in the two letters creates a vagueness that renders the assignment ineffective.
Accounts receivable financing, as it occurred between Rockland and Fenestration, involves the "assignment of the debtor's accounts receivable to the secured party as security for the debtor's obligation to repay money lent by the secured party." In re Apex Oil Co., ArtocBank and Trust v. Apex Oil Co., et al., 975 F.2d 1365, 1368 (8th Cir. 1992). Courts have recognized that "such an assignment is for all practical purposes, a security interest in the accounts receivable."Id. Holding that notice of a security interest constitutes adequate notice of *Page 10 
an assignment under Article 9, the Apex Court noted that there is no "meaningful difference between a security interest and an assignment for the purposes of security." Id. The MFA entered into between Fenestration and Rockland, as it pertains to the D K receivables, constituted a purchase of these accounts. Additionally, the MFA created a security interest in favor of Rockland in all future receivables, which include the Gilbane account. Pragmatically, as well as for the purposes of effective notice, there is no consequential difference in these terms that affect the outcome of this matter. Gilbane may not, therefore, assert that the discrepancy of the two notices created an insurmountable ambiguity enabling them to ignore the notice of assignment.
The notification informed Gilbane that Rockland should be paid Fenestration's ordinary, usual, and full payment. More importantly, as stated above, in the event that the debtor doubts the adequacy of the assignment, the debtor must notify the assignee with reasonable promptness as to the respects in which the account debtor considers the notification ineffective. Section 6A-9-406 cmt 3. Gilbane made no attempt to clarify any misleading or vague portions of the assignment notice as is required under our laws. Rather, Gilbane routed the paperwork to their corporate office and subsequently tendered payments to Fenestration, the assignor, upon Fenestration's unilateral rescission of the assignment.
Citing extra-jurisdictional cases, Rockland points out that a debtor is not entitled to rely on the representations of the assignor after receiving notice of an assignment. In Hall Bros. Construction v.Mercantile Nat'l Bank, the Court held the notice given was sufficient where the assignment was brought to the attention of an officer of the business. 642 N.E.2d 285 (Ind.Ct.App. 1994). The Court further noted that not only could the debtor have followed up with the assignor if there was in fact an ambiguity in the assignment notice, but also the phone call from *Page 11 
the assignee provided ample opportunity to express any concerns and gain clarification. Id. In the case at hand, several telephone conversations took place wherein Gilbane could have clarified any ambiguity they now claim was in the notification. At the very least, the notice should have raised a question for Gilbane, thereby prompting them to inquire as to the assignment/security interest before tendering payment to Fenestration, the assignor.
The notice of assignment sent by Rockland and received by Gilbane prior to the payments that were tendered to Fenestration reasonably identified the rights assigned and was not vague or misleading.
B. Improper Payment
An amendment to an answer will be denied when the amendment would assert a defense that is not available to the defendant. See City ofWarwick v. Boeng Corp., 471 A.2d 1214 (R.I. 1984). The Defendant herein seeks to amend its answer to include the affirmative defense of recoupment and thereafter moves this Court for summary judgment on two counts based on this same defense. To determine the validity of Gilbane's recoupment defense, the Court must undertake a multi-tiered analysis of the pertinent R.I. Uniform Commercial Code ("Code") sections to determine their applicability to the case at bar.
First, the Court must determine whether § 6A-9-406 or § 6A-9-404 will apply to this matter as the parties disagree as to which section the Court should look to determine their respective rights under the controlling agreements. Next, having already determined that the notification was effective, the Court must determine whether the payments tendered to Fenestration by Gilbane subsequent to the February 10, 2006 facsimile constitute wrongful payments under the meaning of the Code. Each of these analyses will be addressed below. *Page 12 
Having established that Rockland's notification of assignment to Gilbane was effective, the Court now turns to the issue of the improper payment and the effect on affirmative defenses available to Gilbane. Because a payment was made to the assignor herein, this Court agrees that a proper application of the Rhode Island Uniform Commercial Code places this case within the bounds of § 6A-9-406. Section 6A-9-406
applies when a secured party (assignee) sues a debtor subsequent to an improper payment to the original debtor (assignor). See In re Apex OilCo., at 1368. In this scenario, the debtor paid the money owed, but it was paid to the wrong person. See id. at 1368-69. The Apex Court made clear that § 9-406, formerly § 9-318(c) is applicable when an assignee sues a debtor for wrongful payment. See In re Apex, 975 F.2d at 1368. In contrast, where the assignee sues the debtor who has failed to makeany payments § 9-404, formerly § 9-318(a), would be applicable. Seeid.
Gilbane, however, asserts its recoupment defense pursuant to §6A-9-404, which is applicable where no payment has been made and the assignee is merely seeking payment from a debtor who has failed to pay.See id. Under § 6A-9-404, a debtor may then assert a recoupment defense claiming that it is entitled to an offset against the assignor. Seeid. In fact, as Rockland points out in its memoranda, the 8th Circuit Court specifically noted in Apex Oil that if the account debtor had paid the assignor, rather than engage in a setoff, § 9-406(a) would apply.
An account debtor, who erroneously makes payments to the assignor subsequent to receipt of notice of the assignment, effectively waives any setoff claims against the assignor once the payment is made.See Nat'l Trade Trust, Inc. v. Merrimac Const., 524 N.W.2d 14, 17
(Minn.Ct.App. 1994). An assignment exists when there is "a transfer by the assignor to the assignee of all interests and rights in the assigned property." See Marandola, 2004 R.I. Super LEXIS 115 at *5-6 (citingFlanders Medeiros Inc. v. Bogosian, 868 F. Supp. 412, 420 (D.R.I. 1994)). The *Page 13 
assignment effectuates "an absolute and irrevocable transfer of ownership." Id. A valid assignment requires only two elements. First, "the subject matter of the assignment [must be] described so that it is readily identifiable." Id. Second, there must exist "clear evidence of the assignor's intent to transfer [his or] her rights." Id.
Notification of an assignment is "for the benefit of the assignee, who would otherwise have no recourse against the account debtor if the assignor failed to forward payment that the account debtor made directly to the assignor." Novartis Animal Health US, Inc. v. Earle Palmer Brown,LLC, 424 F. Supp. 2d 1358, 1364 (D. Ga. 2006). Here, Rockland, along with Fenestration, had communicated to Gilbane the intent of the parties to assign Fenestration's accounts receivables on the G-Tech Building Project to Rockland. The telephone conversations and multiple faxed documents put Gilbane on notice and made them aware of the assignment. The Court has determined that the notification as received was effective as a matter of law. Pursuant to § 6A-9-406(c), if Gilbane required additional proof of the assignment, it was their burden to attain such reasonable proof from the assignee. Here, however, no additional proof was requested.
Subsequent to its receipt of the notice of assignment, Gilbane tendered payment to Fenestration in an attempt to satisfy its debts. "After receipt of the notification, the account debtor may discharge its obligation by paying the assignee and may not discharge the obligation by paying the assignor." Section § 6A-9-406(a). Gilbane's payment to Fenestration was a wrongful payment thereby precluding Gilbane from now seeking shelter under § 6A-9-404. This Court agrees with Plaintiff that § 6A-9-406 governs this transaction. Gilbane erroneously chose to ignore the notification as ineffective, therefore, the payments made to Fenestration as assignor herein, are wrongful payments and do not constitute a discharge of its obligations to Rockland. *Page 14 
 C. Recoupment
As stated above, an amendment to an answer will be denied when the amendment would assert a defense that is not available to the defendant.See Boeng Corp. at 1214. Part 4 of the Uniform Commercial Code governing secured transactions espouses the rights of third parties involved in transactions involving assignments, as well as their available defenses.
1. § 6A-9-404 v. § 6A-9-406
Section 6A-9-404(a), formerly § 9-318(1), dictates the rights acquired by an assignee, as well as the claims and defenses available against an assignee involved in a secured transaction. This section provides in pertinent part:
 Unless an account debtor has made an enforceable agreement not to assert defenses or claims, and subject to subsections (b) through (e), the rights of an assignee are subject to:
 (1) All terms of the agreement between the account debtor and assignor and any defense or claim in recoupment arising from the transaction that gave rise to the contract; and
 (2) Any other defense or claim of the account debtor against the assignor which accrues before the account debtor receives a notification of the assignment authenticated by the assignor or the assignee.
In contrast, § 6A-9-406 details the discharge of an account debtor and the requirements of valid notification of assignment. Section 6A-9-406 reads in pertinent part that:
 (a) . . . an account debtor . . . may discharge its obligation by paying the assignor until, but not after, the account debtor receives a notification, authenticated by the assignor or the assignee, that the amount due or to become due has been assigned and that payment is to be made to the assignee. After receipt of the notification, the account debtor may discharge its obligation by paying the assignee and may not discharge the obligation by paying the assignor. *Page 15 
Unlike § 6A-9-404, this section addresses payments made by the debtor and the effect of payments made following notification to the account debtor of an assignment. Namely, an account debtor cannot discharge its debt by payment to the assignor once in receipt of an effective notice of assignment.
Gilbane argues pursuant to § 6A-9-404(a) (b) which states that the "rights of contract assignee are subject to . . . any defense or claim in recoupment arising from the contract." Specifically, Gilbane asserts that Rockland cannot now stand in the shoes of Fenestration and demand payment. Gilbane notes that in the fall of 2006, the project was finished, at which time Gilbane determined it had paid Fenestration $349,126.65 over the actual contract sum due and now has initiated a recoupment action against Fenestration.
In light of § 6A-9-406 of the General Laws, however, the Court finds that § 6A-9-404 is actually inapplicable to this dispute. Specifically, § 6A-9-404 only applies to situations where the debtor has made no payment at all and the assignee demands payment. Section 6A-9-406 is applicable where a wrongful payment has been made by the account debtor to the assignor subsequent to receipt of proper notice of assignment.
Section 6A-9-404 directly addresses the issue of assignee's rights under such agreements. It states that "the rights of an assignee are subject to . . . [a]ll terms of the agreement between the account debtor against the assignor and any defense or claim in recoupment arising from the transaction that gave rise to the contract." Section 6A-9-404. Rockland points out, however, that the appropriate course of action is for Gilbane to now pursue its recoupment action against Fenestration because it erroneously made its payments directly to Fenestration, the assignor. In the instant matter, however, the defense of recoupment is not presently available to Gilbane because of the wrongful payments made to Fenestration. *Page 16 
 D. Motion to Amend
As stated above, leave to amend an answer will be denied when the amendment would assert a defense that is not available to the defendant.See Boeng Corp., 471 A.2d at 1214. Granting leave in such circumstances would be an exercise in futility. See Medeiros v. Cornwall,911 A.2d 251, 253-54 (holding that the trial court may deny leave to amend when the amendment would be futile). Here, the Court has established that the defense of recoupment is not available to Gilbane as to Rockland. Therefore, granting leave to amend its answer merely to assert this affirmative defense would prove futile in the instant matter.
Finally, the Court pauses to address the undue delay in bringing this Motion to Amend Defendant's Answer and the substantial prejudice that would result should it be granted. Standing alone, undue delay will not prompt this Court to deny leave to amend a pleading. However, when coupled with the failure to present a compelling reason for such delay, the Court will determine whether the inordinate amount of time that has passed is justified. This jurisdiction has recognized that "mere delay is an insufficient ground for denial of an amendment," however, "undue and excessive delay that causes prejudice to the opposing party is grounds for denial." See Vincent v. Musone, 572 A.2d 280, 283 (R.I. 1990) (quoting Inleasing Corp. v. Jessup, 475 A.2d 989, 992 (R.I. 1984);Faerber v. Cavanagh, 568 A.2d, 326, 329 (R.I. 1990)) (citations omitted).
In the case at bar, defendant Gilbane neglected to file an amended answer to add the affirmative defense of recoupment until almost eighteen (18) months into this litigation. The defendant has presented little to no reason to explain the failure to initially include this defense, *Page 17 
or even to add it in a timely fashion. The First Circuit Court has held, "[w]hile courts may not deny an amendment solely because of delay and without consideration of the prejudice to the opposing party . . . where . . . a considerable period of time has passed between the filing of the answer and the motion to amend, courts have placed the burden upon the movant to show some `valid reason for his neglect and delay.'"Hayes v. New England Millwork Distributors, Inc., 602 F.2d 15, 19-20
(1st Cir. 1979) (citations omitted).
The defendant waited until a cross motion for summary judgment and argument thereon to assert this affirmative defense. In sum, the record discloses that defendant has failed to show any "valid reason for his neglect and delay." Id. Allowing the defendant to amend at this time, would undoubtedly expose plaintiff to substantial prejudice and additional costs in litigating this matter.
 Conclusion
After due consideration of the arguments advanced by counsel and in their supporting memoranda, the Court will grant the Plaintiff's Motion for Summary Judgment, as described herein, on Counts V and VII of the Verified Complaint.
The Court will deny the Defendant's Motion to Amend its Answer, as well as its Cross-Motion for Summary Judgment on Counts V and VI.
Prevailing counsel shall present an order consistent herewith which shall be entered after due notice to counsel of record.
[1] Factoring is "the purchase of accounts receivable from a business by a factor who thereby assumes the risk of loss in return for some agreed upon discount." (Webster's Third New Int'l Dictionary 1961.) More specifically, "old-line factoring, as is involved in this dispute, "involves the purchase of accounts receivable under a factoring contract whereby the factor provides to the client both credit and the servicing of accounts receivable purchased without recourse. For its services the factor charges a commission." See American Credit Corp. v. Commissionerof Internal Revenue, 32 T.C.M. (CCH) 122, (U.S. Tax Ct. (1973)). The factoring agreement herein represents a permeation of old-line factoring agreements in that it provides for appropriate recourse by the factor. Specifically, the MFA requires a mandatory repurchase by Fenestration of its accounts in the event that the assigned account becomes the subject of a dispute, as well as in the event of default by account debtors. (Compl. Ex. A.) As an additional means of security, the MFA also grants a security interest in favor of Rockland in the accounts receivable of Fenestration, whether or not specifically sold to Rockland. (Compl. Ex. A.)
[2] There exists joint-check agreements entered into between Gilbane, Fenestration, and the material suppliers that provide for payment to be sent in joint-check form to Fenestration as "General Contractor" and to the material suppliers as "Sub-Contractors." (See Pl's Memo., Ex. G.)