193 N.J. Super. 456 (1983)
474 A.2d 1108
TRANSCON LINES, A CORPORATE BODY, PLAINTIFF,
v.
LIPO CHEMICAL, INC., A CORPORATE BODY, DEFENDANT, THIRD-PARTY PLAINTIFF,
v.
E. PIZANTE, LTD., THIRD-PARTY DEFENDANT.
Superior Court of New Jersey, District Court Passaic County.
December 28, 1983.
*458 Stephen O'Malley for plaintiff (Weinstock and O'Malley, attorneys).
Douglas H. Burg for defendant (Gelman and Gelman, attorneys).
MANDAK, J.S.C. (Temporarily assigned).
Plaintiff Transcon Lines (Transcon) brought this action to recover freight charges from defendant Lipo Chemical, Inc. (Lipo). Lipo served a third-party complaint on E. Pizante, Ltd. (Pizante) alleging an unauthorized shipping arrangement. Third-party defendant, Pizante, did not defend and default has been entered.
This case was tried in part upon the following stipulation of facts:
Defendant, Lipo, ordered from third-party defendant, Pizante, five 55-gallon drums of jojoba oil. The terms of the shipment were F.O.B. point of origin. Lipo received the property from Transcon, as carrier, and no claim for loss or damage *459 was filed by Lipo with regard to the property. There was no dispute regarding authenticity of the exhibits presented, namely the bill of lading, the freight bill for the shipment in question and the freight bill for a prior shipment not in question. Lipo has stipulated that if the court should find that the shipments were correctly made with a release value[1] of $10,000 a drum, that the principal amount demanded in Transcon's complaint, the published lawful rate, is the correct measure of damages. Transcon has stipulated that in the event the court finds Transcon improperly shipped the goods with a release value of $10,000 a drum, that the correct tariff rate is 19.71 a hundred-weight, that the total rate charges for the shipment in question would have been $422.77 and that defendant had paid the sum of $379.55 prior to the institution of suit.
In addition to stipulations of the parties, this court made the following findings of fact: According to the purchase agreement between Pizante and Lipo, Pizante was to arrange to have the goods shipped to Lipo. Lipo insured its property in transit for any loss in excess of the minimum release value of 50 cents a pound. It had been customary for Pizante to arrange a low release value because Lipo had excess insurance through a third party.
On December 21, 1981 at its Arizona terminal, Transcon received five 55-gallon drums of jojoba oil for carriage pursuant to a uniform domestic straight bill of lading. Pizante's supplier, Desert Whale Jojoba, the consignor, consigned the drums to Pizante, the consignee, at Brooklyn, New York. After receipt of the property for shipment, Transcon received a telephone call from Pizante instructing Transcon to change the bill of lading to reflect Pizante as consignor and Lipo as consignee.
*460 Transcon diverted the shipment and tendered delivery to Lipo in Paterson. The property arrived accompanied by the original bill of lading, unchanged by Pizante's instructions to divert, indicating the original consignor and consignee, a $10,000 a drum release value and marked "collect." Lipo's representative accepted the drums and endorsed the bill of lading.
Transcon subsequently billed Lipo at a tariff rate of $97.92 a hundred-weight, which represents the correct tariff for such goods carrying a $10,000 release value. Lipo objected to the excess release value and has stipulated that its liability is limited to a tariff rate of $19.71 a hundred-weight, which represents the correct tariff for such goods carrying the minimum release value of 50 cents.
The issue to be resolved therefore is whether Lipo, a reconsignee, is liable to Transcon, the carrier, for the full amount of the published tariff rate on goods delivered to it. The court concludes that Lipo is not liable for the published tariff rate.
The Interstate Commerce Act controls questions of liability for payment of freight rates arising from interstate shipment of goods. 49 U.S.C.A. § 10701 et seq. In interpreting and applying the Interstate Commerce Act, our courts are bound by federal case law. Checker Van Lines v. Siltek International, Ltd., 169 N.J. Super. 102, 105 (App.Div. 1979). The section governing the question in the case at bar is 49 U.S.C.A. § 10744 which provides in relevant part:
(a)(1) Liability for payment of rates for transportation for a shipment of property by a shipper or consignor to a consignee other than the shipper or consignor, is determined under this subsection when the transportation is provided by a rail, motor, or water common carrier under this subtitle. When the shipper or consignor instructs the carrier transporting the property to deliver it to a consignee that is an agent only, not having beneficial title to the property, the consignee is liable for rates billed at the time of delivery for which the consignee is otherwise liable, but not for additional rates that may be found to be due after delivery if the consignee gives written notice to the deliverying carrier before delivery of the property 
(A) of the agency and absence of beneficial title; and

*461 (B) of the name and address of the beneficial owner of the property if it is reconsigned or diverted to a place other than the place specified in the original bill of lading.

(2) When the consignee is liable only for rates billed at the time of delivery under paragraph (1) of this subsection, the shipper or consignor, or, if the property is reconsigned or diverted, the beneficial owner, is liable for those additional rates regardless of the bill of lading or contract under which the property was transported. The beneficial owner is liable for all rates when the property is reconsigned or diverted by an agent but is refused or abandoned at its ultimate destination if the agent gave the carrier in the reconsignment or diversion order a notice of agency and the name and address of the beneficial owner. A consignee giving the carrier and a reconsignor or diverter giving a rail carrier, erroneous information about the identity of the beneficial owner of the property is liable for the additional rates.
(b) Liability for payment of rates for transportation for a shipment of property by a shipper or consignor, named in the bill of lading as consignee, is determined under this subsection when the transportation is provided by a rail or express carrier under this subtitle. When the shipper or consignor gives written notice, before delivery of the property, to the line-haul carrier that is to make ultimate delivery 
(1) to deliver the property to another party identified by the shipper or consignor as the beneficial owner of the property; and

(2) that delivery is to be made to that party on payment of all applicable transportation rates;

that party is liable for the rates billed at the time of delivery and for additional rates that may be found to be due after delivery if that party does not pay the rates required to be paid under clause (2) of this subsection on delivery. However, if the party gives written notice to the delivering carrier before delivery that the party is not the beneficial owner of the property and gives the carrier the name and address of the beneficial owner, then the party is not liable for those additional rates. A shipper, consignor, or party to whom delivery is made that gives the delivering carrier erroneous information about the identity of the beneficial owner, is liable for the additional rates regardless of the bill of lading or contract under which the property was transported. This subsection does not apply to a prepaid shipment of property. [Emphasis supplied]
This section addresses situations of liability with some particularity but no mention is made of any liability on the part of a reconsignee where, as here, a named consignee orally redirects shipment and violates the notice provisions of the section. It has been held, where the reconsignment is not made in writing, § 10744 is not effective to make the ultimate reconsignee liable for the freight charges. Pennsylvania R. Co. v. Greene, 173 F. Supp. 657, 659 (S.D.Ala. 1959); See, 13 Am.Jur.2d, Carriers, *462 § 476 at 946. However, other judicial decisions interpreting the Interstate Commerce Act have found the reconsignee liable upon principles of common law.
The instructive cases addressing the question of freight rate liability after redirection of shipments in interstate commerce were decided prior to the 1978 revision of the Interstate Commerce Act. Section 10744 on liability for payment of rates finds its source in § 3(2) and 3(3) of the old Interstate Commerce Act. The 1978 revision was not intended to cause any substantive change in the law. In House Report No. 95-1395, the Committee on the Judiciary addressed itself specifically to preservation of the precedent value of earlier judicial decisions after revision and codification.[2] Satisfied that the reconsignment cases under the pre-1978 Interstate Commerce Act constitute good law today, I turn to a discussion of those cases.
It is well settled that the shipper rather than the consignee is primarily liable to the carrier for freight charges. The court will look beyond the shipper's primary responsibility only when there is some binding obligation on the part of the consignee to pay freight charges. Louisville & N.R. Co. v. Central Iron & Coal Co., 265 U.S. 59, 44 S.Ct. 441, 68 L.Ed. 900 (1924).
The liability of the named, diverting consignee for transportation charges may arise expressly under federal statute or by an *463 express contract or an implied obligation arising from the consignee's ownership, presumptive ownership, acceptance of the goods or receipt of the benefits conferred by the carrier. States Marine International, Inc. v. Seattle-First National Bank, 524 F.2d 245, 248 (9 Cir.1975); Northwestern Pacific Railroad v. Burchwell Co., 349 F.2d 497, 498-99 (5 Cir.1965).
Two lines of reasoning have evolved in the reconsignment cases and the results of those decisions are at best incongruous. The established rule was originally set forth in New York Central R.R. v. Warren Ross Lumber Company, 234 N.Y. 261, 137 N.E. 324 (1922). Ross held that the reconsignor was liable for freight charges on the theory that the diversion order, absent any disclaimer of ownership, constituted such dominion and control over the shipment as to constitute an acceptance of the goods. As the presumptive owner of the freight, being the named consignee, it follows that if it accepted the freight in its capacity as owner, the law implied a promise on its part to pay the lawful charge.
The divergent view was expressed by the Seventh Circuit in New York Cent. R. Co. v. Transamerica Petroleum Corp., 108 F.2d 994 (7 Cir.1939). The court held that a reconsignor may in certain cases limit its liability and that under the facts before the court the reconsignor was not liable, leaving the carrier with recourse only against the ultimate consignee. This decision rested on the theory that the carrier is free to contract as to whom should be liable for its carrying charge as fixed by law. By accepting the reconsignment directions received from the consignee, with instruction to collect the freight upon delivery, the carrier contracted anew with the original consignee. This novation created a new consignor/consignee relationship as between the original consignee and reconsignee, the carrier having no recourse against the new consignor. Transamerica concluded that the liability of the reconsignee, to whom delivery was ultimately made, satisfied the requirements of the Interstate Commerce Act on the theory that the named consignee had assigned its rights and liabilities to the reconsignee. *464 Ross, on the other hand, imposed liability on the diverting consignee without mention of the party who ultimately accepted delivery of the shipment.
In this case Lipo is the purchaser and owner of the jojoba oil. Lipo accepted delivery of the shipment and its representative endorsed the bill of lading. The question then to be determined is whether, under the facts and circumstances of this case, such acceptance imposed liability for payment of the published freight rates upon Lipo.
If a named consignee accepts a shipment of goods, it becomes liable, as a matter of law, for the full amount of the freight charges, whether they are demanded at the time of delivery or not until later. Louisville & N.R. Co. v. Central Iron & Coal Co., 265 U.S. 59, 70, 44 S.Ct. 441, 443, 68 L.Ed. 900 (1924); Pittsburgh, C.C. & St. L.R.R. v. Fink, 250 U.S. 577, 40 S.Ct. 27, 63 L.Ed. 1151 (1919); Southern Pacific Co. v. Wheaton Brass Works, 5 N.J. 594, 600 (1950). Lipo argues, however, that it is not the consignee in this case because it was not named as consignee in the bill of lading and for that reason it is not responsible to pay the disputed shipping charges. Some case law disagrees and holds that one other than the consignor or consignee who receives delivery of a shipment of goods undertakes to pay the lawful rate of freight. See cases annotated in 61 A.L.R. 422-425. This is especially true when delivery and the bill of lading are accepted by the owner or purchaser of the goods. Arizona Feeds v. Southern Pacific Transportation Co., 21 Ariz. App. 346, 519 P.2d 199 (Ariz. Ct. App. 1974).
Under the circumstances in other cases, however, the acceptance of delivery of a shipment by a purchaser other than the named consignor or consignee has been held not to render him liable. See cases annotated in 61 A.L.R. 422, 425-428. In any event, this court must look to the facts and circumstances of this particular case to determine what relation each party has to the other with regard to payment of freight rates.
*465 An examination of the bill of lading provides the primary determination of liability. The bill of lading serves not only as a receipt but as the contract. Louisville & N.R. Co., supra, 265 U.S. at 67, 44 S.Ct. at 443. The bill of lading indicates Desert Whale Jojoba as consignor and E. Pizante, Ltd. as consignee. Where no mention was made of Lipo Chemical in the bill of lading and no express contract has been entered into between Transcon and Lipo, this court must look to the conduct of the parties at the time of delivery to determine whether an implied obligation to pay freight charges exists. States Marine Int., Inc., supra, 524 F.2d at 248.
Transcon delivered the shipment to Lipo pursuant to oral instruction. No evidence was offered to show that Pizante had given Transcon written notice, before delivery of the property, identifying Lipo as the beneficial owner of the property and that delivery was to be made to Lipo on payment of all applicable transportation rates.[3] Under Ross the liability of Pizante is clearly established.[4] Throughout the period of shipment Pizante was the presumptive owner of the property. Transcon received no notice to rebut this presumption and could not have delivered the shipment to Lipo as owner. In fact, Transcon made no demand for payment at the time of delivery. For all that Transcon knew, Lipo could merely have been Pizante's agent for delivery of the property.
Transamerica and the cases which follow it are inapposite. Those cases hold that by diverting the shipment Transcon *466 accepted an offer for novation from Pizante. The new contract would have Pizante as consignor and Lipo as consignee and by accepting the shipment Lipo would be liable as consignee. The novation theory is supported by the fact that the diverting consignee expressly directed the carrier to deliver the shipment to the reconsignee and to collect the freight charge from it.[5] The result reached in Transamerica cannot be reached here. Pizante never expressly directed Transcon to collect freight charges from Lipo and therefore the Transamerica novation theory must fail under these facts. The reasoning in Ross held the diverting consignee liable despite its direction to deliver to the reconsignee upon payment of freight charges.[6]
Dictum in Transamerica indicates acceptance of an assignment of rights and liabilities of the named consignee by the reconsignee when it accepts delivery of the shipment. The bill of lading issued in this case is a straight bill, that is, the goods were consigned to a specified person. 49 U.S.C.A. § 82. A straight bill is not negotiable but it is capable of being assigned. Arizona Feeds v. Southern Pacific Transp. Co., 21 Ariz. App. 346, 519 P.2d 199, 205 (Ariz. Ct. App. 1974). An assignee of a straight bill of lading stands in all respects in the shoes of his assignor.
*467 In order to effect a valid assignment it is fundamental that there must be evidence of an intent to assign or transfer the specific thing or debt and the subject matter of the assignment must be described sufficiently to make it capable of being readily identified. 3 Williston, Contracts (3 ed. Jaeger 1957), § 404 at 4. Evidence presented indicates a course of dealing between Pizante and Lipo which called for shipment of goods at the minimum release value. Lipo instructed Pizante to ship the goods as per the normal arrangements between them. Pizante could not have intended to assign a bill of lading indicating a $10,000 release value when such shipping terms would be in breach of contract. Even if intended, such intent was never communicated to Lipo. Acceptance by the assignee is necessary to the validity of an assignment. Lipo's representative endorsed a bill of lading which indicated a $10,000 release value but also contained Desert Whale Jojoba as consignor and Pizante as consignee. On its face, the bill of lading was insufficient to effect a communication to Lipo that it would be liable for freight rates based on a $10,000 release value. There having been no other communication to Lipo either from Pizante or Transcon, it cannot be said that Lipo knew of any assignment of the bill of lading and, therefore, could not have accepted an assignment.
Plaintiff relies on Southern Pacific Co. v. Wheaton Brassworks, 5 N.J. 594 (1950) to support its contention that by signing the original bill of lading, Lipo's representative obligated Lipo to pay the full charges for shipment of the property. Wheaton iterated the established rule that a consignee who accepts shipment is liable for freight charges. Wheaton, however, did not consider the special legal considerations associated with cases of reconsignment.
Plaintiff also asserts that Lipo has received the benefit of services provided by Transcon. Admittedly, Lipo took delivery of the shipment, but it did not benefit from a $10,000 release value assigned to goods shipped from Desert Whale Jojoba in Arizona and destined for Pizante in Brooklyn.
*468 The express terms of § 10744 of the Interstate Commerce Act are not effective to make Lipo, the reconsignee, liable in this case. I conclude that the rule in Ross imposing liability on the diverting consignee provides the correct interpretation of the Interstate Commerce Act to be applied to the facts here. Federal reconsignment cases have followed the decision in Ross. See, e.g., States Marine Int., Inc. v. Seattle-First Nat. Bank, 524 F.2d 245 (9 Cir.1975); Northwestern Pac. R. Co. v. Burchwell Co., Inc., 349 F.2d 497 (5 Cir.1965). Our courts have also followed the theory expressed in Ross. See N.Y. Central R.R. Co. v. Stanziale, 105 N.J.L. 593 (E. & A. 1929).
As discussed above, the facts before me do not satisfy the requirements of Transamerica. Something more than a bare oral reconsignment, delivery and acceptance of a shipment of goods is required in order to impose liability for payment of freight charges upon a reconsignee. The Interstate Commerce Act, as interpreted, requires that the reconsignment order be in writing, and that the consignee instruct the carrier to collect the freight charges from the reconsignee. Thus, the carrier is free to contract as to when and by whom the charges of transportation shall be paid. New York Cent. R. Co. v. Transamerica Petroleum Corp., supra, 108 F.2d at 997. Failure to satisfy these requirements precludes Transcon from asserting that it had contracted to collect freight charges from Lipo. Accordingly, I find no cause for action.[7]
NOTES
[1] The Interstate Commerce Commission may require a carrier to establish rates for transportation of property under which the liability of the carrier for that property is limited to a value established by written declaration of the shipper. 49 U.S.C.A. § 10730.
[2] "Substantive change not intended.  Like other codifications undertaken to enact into positive law all titles of the United States Code, this bill makes no substantive change in the law. It is sometimes feared that mere changes in terminology and style will result in changes in substance or impair the precedent value of earlier judicial decisions and other interpretations. This fear might have some weight if this were the usual kind of amendatory legislation where it can be inferred that a change of language is intended to change substance. In a codification statute, however, the courts uphold the contrary presumption: the statute is intended to remain substantively unchanged." H.R. 1395, 95th Cong., 2d Sess., (1978); 1978 U.S.Code Cong. & Admin.News 3009, 3018. See also Martin v. Dyer-Kane Co., 113 N.J. Eq. 88 (E. & A. 1933).
[3] The prepayment clause in the bill of lading states: "If charges are to be prepaid, write or stamp here, `To be Prepaid.'" In the space provided there appears the handwritten word "Collect" which is an instruction given by the original shipper, Desert Whale Jojoba, and evidences the contract between the shipper and the carrier.
[4] One result of the Ross rule has been the imposition of absolute liability for charges upon a party who is named as consignee of a shipment, but reconsigns without accepting delivery. Note, "Liability of Reconsignors for Freight Charges," 49 Yale L.J. 1457 (1940).
[5] The court in Transamerica agreed with the conclusion reached in Chesapeake & O. Ry. Co. v. Southern Ca., C. & M. Co., 254 Ill. App. 238, 246 (Ct.App. 1929) where the court said: "When the defendant gave written instructions to plaintiff to deliver the cars in question to the Lakeside Coal Company (one who was not its agent), under express conditions that amounted to a direction to plaintiff to collect the freight at point of delivery from defendant's assignee, plaintiff having accepted such reconsignment order was bound as a matter of contract between the parties to look to such assignee for its freight charges in the event that defendant's assignee (the Lakeside Coal Company) accepted such shipment...."
[6] Ross indicated that "the carrier neglected to collect on delivery" to the reconsignee. The court could not have reached its decision had it concluded that the carrier had a positive duty to collect from the ultimate consignee. It appears that the carrier merely had an option to request payment from the party to whom it delivered. See 13 Am.Jur.2d, Carriers, § 477 at 946.
[7] Notwithstanding the court's finding of no cause for action, Lipo has stipulated that it is liable for freight charges at a tariff rate of $19.71 a hundred-weight computed to be $422.77. Lipo has paid $379.55 leaving an unpaid balance of $41.22.