256 N.J. Super. 342 (1992)
606 A.2d 1157
ROBERT G. BERKOWITZ, PLAINTIFF,
v.
JOSEPH HAIGOOD AND JAMES NICHOLS, DEFENDANTS.
Superior Court of New Jersey, Law Division Middlesex County.
Decided March 12, 1992.
*344 Robert G. Berkowitz, pro se, Plaintiff.
James Nichols, Esq., pro se, Defendant.
MATHIAS E. RODRIGUEZ, J.S.C.
The plaintiff, Robert G. Berkowitz is a chiropractic doctor, who brought an action against his patient, Joseph Haigood, and his patient's attorney, James Nichols, for the payment of medical bills. Judgment by default has been granted against Mr. Haigood.
Both remaining parties, Dr. Berkowitz and Mr. Nichols, move for summary judgment. The issue to be determined is whether an attorney-at-law is personally liable to the medical provider for failing to honor an assignment by the client of the proceeds from a personal injury action.
The facts material to the decision in this case are not in dispute. Plaintiff rendered medical services from about October 26, 1986 to June 10, 1987, to the defendant, Joseph Haigood, who suffered personal injuries in an automobile accident. The medical bills amounted to $2,435.00. To secure payment of the medical bills, defendant Haigood executed a document to plaintiff on April 6, 1987. That document stated that (1) plaintiff would wait for payments from either Haigood's insurance proceeds or from pending personal injury settlement funds; or (2) Haigood would pay the medical bills in full if it was determined either:
(a) that there is no insurance company obligated to pay for the services, or if the insurance company involved refuses to acknowledge an assignment to the Doctor(s) or make other provisions for the protection of the interest of the Doctors; or
(b) if a liability claim exists, and my attorney refuses to agree to protect the interest of the Doctor(s), or if I have not engaged the services of an attorney.
On April 27, 1987, Haigood signed another document which purported to create a lien against the proceeds of his personal injury action and directed and authorized his attorney to disburse *345 the funds to the medical provider. The assignment was to be irrevocable regardless of any substitution of attorney.[1]
The two documents were sent to Haigood's original attorney, Sanford F. Juman. That attorney did not refuse to agree to protect the interests of the doctor. When James Nichols replaced Juman as Haigood's attorney on April 20, 1990, the two documents allegedly were transferred to Nichols as a part of the file. James Nichols accepted the file and undertook the representation of Mr. Haigood without raising any objection to the assignment.
On October 29, 1990, Dr. Berkowitz notified James Nichols, by certified mail, of the existence of the two documents and provided him with copies of the documents. Mr. Nichols' secretary received and signed for the certified letter sent by Dr. Berkowitz.
Shortly thereafter, on November 19, 1990, Mr. Nichols and Mr. Haigood entered into an agreement which distributed the settlement funds of $16,000.00; $10,226.24 to Haigood, $3,543.76 to Juman and $2,230.00 to Nichols. The agreement also provided that "[a]ll medical and other bills are to be paid by the client out of his/her share of proceeds." Berkowitz's claim was not paid and has remained unpaid.
*346 Initially, we must consider whether a client may assign the proceeds from a personal injury action to a medical provider.
Generally, as a matter of public policy, a claim for damages in tort for personal injuries is not assignable before judgment. N.J.S.A. 2A:25-1; DiTolvo v. DiTolvo, 131 N.J. Super. 72, 79, 328 A.2d 625 (App.Div. 1974). However, the proceeds from such a claim may be assigned. Costanzo v. Costanzo, 248 N.J. Super. 116, 122, 590 A.2d 268 (Law Div. 1991). N.J.S.A. 2A:25-1 provides that judgments are assignable and, therefore, by clear implication, any proceeds derived from a settlement of a claim for personal injuries must also be assignable.
A valid assignment must contain clear evidence of the intent to transfer the person's rights and "the subject matter of the assignment must be described sufficiently to make it capable of being readily identified." 3 Willston, Contracts (3 ed. Jaeger 1957) Section 404 at 4; Transcon Lines v. Lipo Chem., Inc. 193 N.J. Super. 456, 474 A.2d 1108 (D.Ct. 1983).
The assignment must be clear and unequivocal in order to be effective as to the obligor. Costanzo v. Costanzo at 124, 590 A.2d 268. Obviously the obligor must be properly notified of the existence of the assignment.
Once properly notified of the assignment, the obligor is charged with the duty to pay the assignee and not the assignor. See Russell v. Fred A. Pohl, Co., 7 N.J. 32, 40, 80 A.2d 191 (1992); Spilka v. South America Managers, Inc. 54 N.J. 452, 462, 255 A.2d 755 (1969); Burke v. Hoffman 28 N.J. 467, 473-4, 147 A.2d 44 (1958).
In this matter, the document signed by Mr. Haigood, (the "assignor"), on April 27, 1987, clearly and unequivocally evinced his intent to assign and transfer the proceeds of the personal injury litigation to Dr. Berkowitz, (the "assignee"), and authorized and directed Mr. Nichols, (the "obligor"), to pay the sums owed the doctor for medical treatment.
*347 In addition, the obligor, Mr. Nichols, was properly notified of the existence of the assignment and, therefore, had the duty to pay the assignee and not the assignor.
However, the attorney, obligor, interposes R.P.C. 1.15(b) as a defense for failing to transfer the settlement funds to the medical provider. This Rule of Professional Conduct states:
"Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this Rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive."
The attorney argues that, as a fiduciary, and because of this Rule, he had an obligation to promptly turn over the proceeds from the litigation to his client.
This Rule, however, does not prohibit the client from assigning the proceeds from the pending litigation to third parties. Since the client has the power to validly assign the proceeds, the attorney has the obligation to honor such an assignment, if properly notified. The attorney does not violate the Rule because the funds in his trust account no longer belong to his client. The funds belong to the assignee of the client and, therefore, the client is not entitled to receive them under RPC 1.15(b).[2]
Therefore, the plaintiff's motion for summary judgment is granted. Defendant's motion is denied.
NOTES
[1] "I hereby authorize and direct you, my attorney, to pay directly to said doctor such sums as may be due and owing him for medical service rendered me both by reason of this accident and by reason of any other bills that are due his office and to withhold such sums from any settlement, judgment or verdict as may be necessary to adequately protect said doctor. And I hereby further give a lien on my case to said doctor against any and all proceeds of my settlement, judgment or verdict which may be paid to you, my attorney, or myself, as the result of the injuries for which I have been treated or injuries in connection therewith.

I agree never to rescind this document and that a rescission will not be honored by my attorney. I hereby instruct that in the event another attorney is substituted in this matter, the new attorney honor this lien as inherent to the settlement and enforceable upon the case as if it were executed by him."
[2] See Herzog v. Irace, 594 A.2d 1106 (Me. 1991) where the Maine Supreme Court interpreted a similar Rule of Professional Conduct in a comparable manner.