700 A.2d 1239

H. HOSSEIN TIRGAN, M.D., PLAINTIFF, v. MEGA LIFE
AND HEALTH INSURANCE AND MAGDI ABDEL
WAHED, DEFENDANTS.

Superior Court of New Jersey
Law Division
Atlantic County

Decided May 21, 1997.

---

*H. Hossein Tirgan*, plaintiff pro se.

*Louis P. DiGiaimo* for defendant Mega Life & Health Insurance (*DelMauro & Associates*).

*Magdi Abdel Wahed*, defendant pro se.

WINKELSTEIN, J.S.C.

Plaintiff is a physician specializing in oncology who, between September 1995 and March 1996, rendered chemotherapy to defendant Magdi Abdel Wahed (Abdel Wahed). Prior to treatment, on August 17, 1995, Abdel Wahed purchased a health insurance plan from the trustee of the Business and Professional Service Industry Trust which was underwritten and administered by defendant Mega Life and Health Insurance (Mega Life). Plaintiff's total bill for services rendered to Abdel Wahed was $43,909.50. Mega Life paid $12,028.50. Plaintiff has filed this lawsuit seeking the balance due against both Abdel Wahed and Mega Life.

The matter now comes before me on a motion by defendant Mega Life for summary judgment.[1] Defendant Mega Life takes the position that plaintiff does not have standing to bring suit under defendant Abdel Wahed's insurance contract and, alternatively, even if plaintiff does have standing, that defendant Mega Life has complied with the provisions of the insurance contract.

Under the terms of the insurance contract purchased by Abdel Wahed he received basic hospital medical coverage with a $1,000 deductible, with the plan paying 80% of covered hospital charges up to a maximum of $22,500 and 80% of other charges related to surgery. Abdel Wahed also purchased certain options, including coverage for outpatient radiation and chemotherapy for cancer treatment with a maximum daily benefit of $1,000 and a maximum lifetime benefit of $100,000. Payments for doctor's visits were limited to $60 per visit. Abdel Wahed did not purchase continued care, maternity or vision benefits. The benefit section of the policy provided that covered expenses would be the lesser of (1) the limits set forth for that type expense under the certificate schedule or (2) the usual and customary charge for the medical service or supplies.

Abdel Wahed began receiving treatment for gastric lymphoma on September 30, 1995. On October 23, 1995, Mega Life received notice that Abdel Wahed was undergoing the treatment by way of a telephone call from an unidentified person in plaintiff's medical offices. During that call plaintiff was advised that Mega Life could not verify benefits without being provided with a diagnosis or chief complaint. No verification of benefits was provided.

Abdel Wahed thereafter executed an assignment of his right to receive the insurance benefits to plaintiff, who was to be paid directly by Mega Life. When the bills were received by Mega Life they were paid pursuant to the policy. Excluded from payment were charges exceeding the $1,000 daily maximum, the

---

[1] This decision is a more complete explanation of the court's decision from the bench on May 16, 1997.

$60 per visit maximum, the one doctor visit per day limitation, as well as all of the deductibles and copayments. Payments were also limited to the usual and customary charges as determined by Mega Life.

Plaintiff argues that as Abdel Wahed's assignee he has standing to bring this claim for unpaid medical services directly against Mega Life. He further argues that his charges were reasonable and should be paid.

Let me first address the issue of plaintiff's standing to bring this lawsuit. The question of whether a doctor has the right to sue for a patient's health insurance benefits on behalf of the patient has never been addressed in this jurisdiction. Generally, one may not ordinarily claim standing to assert the rights of a third party under a contract. *See Jersey Shore Med. Center-Fitkin Hosp. v. Estate of Sidney Baum*, 84 *N.J.* 137, 144, 417 *A.*2d 1003 (1980). Although persons may enter into a contract for the benefit of others, one who is not a party to a contract may not sue to enforce it merely because he or she happens to receive a benefit from it. *See* Model Jury Charges 4.18 (citing *Brooklawn v. Brooklawn Hous. Corp.*, 124 *N.J.L.* 73, 11 *A.*2d 83 (E. & A.1940) and *First Nat'l State Bank v. Carlyle House, Inc.*, 102 *N.J.Super.* 300, 246 *A.*2d 22 (Ch.Div.1968), *aff'd*, 107 *N.J.Super.* 389, 258 *A.*2d 545 (App.Div.1969), *certif. denied*, 55 *N.J.* 316, 261 *A.*2d 359 (1970)). Rather, for a third party to enforce a contract, it must clearly appear that the contract was made by the parties with the intention to benefit the third party and that the parties to the contract intended that he or she receive a benefit enforceable in court. *Id.* "The contractual intent to recognize a right to performance in the third person is the key." *Broadway Maint. Corp. v. Rutgers, State Univ.*, 90 *N.J.* 253, 259, 447 *A.*2d 906 (1982). "If that intent does not exist, then the third person is only an incidental beneficiary, having no contractual standing." *Ibid.*

However, an individual may have rights in a contract which have been assigned to him. *See, e.g., Berkowitz v. Haigood*, 256 *N.J.Super.* 342, 346, 606 *A.*2d 1157 (Law Div.1992). To claim

such rights, the assignment must be valid. *Ibid.* "A valid assignment must contain clear evidence of the intent to transfer the person's rights and 'the subject matter of the assignment must be described sufficiently to make it capable of being readily identified.'" *Ibid.* (citing Williston, *Contracts* § 404 at 4 (3 ed. 1957); *Transcon Lines v. Lipo Chem., Inc.,* 193 *N.J.Super.* 456, 467, 474 *A.*2d 1108 (D.Ct.1983)). To be effective, the assignment must be clear and unequivocal and must be noticed to the obligor. *Berkowitz, supra,* 256 *N.J.Super.* at 346, 606 *A.*2d 1157 (citing *Costanzo v. Costanzo,* 248 *N.J.Super.* 116, 590 *A.*2d 268 (Law Div.1991)). Once properly notified of the assignment, the obligor has the duty to pay the assignee, rather than the assignor. *Ibid.* (citing *Russell v. Fred G. Pohl, Co.,* 7 *N.J.* 32, 40, 80 *A.*2d 191 (1951); *Spilka v. South America Mgrs., Inc.,* 54 *N.J.* 452, 462, 255 *A.*2d 755 (1969); *Burke v. Hoffman,* 28 *N.J.* 467, 473–74, 147 *A.*2d 44 (1958)).

Although an issue of first impression in New Jersey, in New York it has been held that a patient may assign his or her rights under an insurance contract to a physician who renders treatment upon the patient. *See, e.g., Pro Cardiaco v. Trussell,* 863 *F.Supp.* 135, 138 (S.D.N.Y.1994) (holding that affidavit under which affiant identified himself as sole heir of patient, indicated that hospital was authorized representative of patient with respect to insurance claim, and directed that payment of insurance proceeds be made only to hospital, constituted a valid assignment of benefits); *Gingold v. State Farm Ins. Co.,* 168 *Misc.*2d 62, 642 *N.Y.S.*2d 812 (Queens Cty.1996) (finding that patient's authorization for doctor to receive direct payments from insurance company amounted to assignment of rights through which doctor had standing to bring suit to recover payment under "no-fault" provisions of insurance policy). The New York case law further indicates that, even when a document only designates that money be paid over to a third party, an assignment is effectuated so long as the obligor receives notice and is directed to pay the third party from specific funds owed an assignor. *See Trussell, supra,* 863 *F.Supp.* at 138 (citations omitted); *Gingold, supra,* 642 *N.Y.S.2d* at 813.

Here, as in *Trussell, supra,* and *Gingold, supra,* I find that plaintiff does have standing to assert a claim for payments based on the authorization from Abdel Wahed to permit plaintiff to accept payments directly from Mega Life on his behalf. No more than that authorization is needed. There is no claim made in this case that Abdel Wahed ever revoked or intended to revoke consent for plaintiff to receive payments. Further, notice is not an issue, as payments were in fact mailed directly to plaintiff from Mega Life on Abdel Wahed's behalf for medical services rendered to Abdel Wahed. There is no reason to treat a doctor, as the assignee under the patients health insurance policy, different from any other assignee. Once the assignment is made, a doctor has the right to enforce the patient's contract as a third party beneficiary. There can be little doubt that when a patient obtains health insurance it is intended by both the patient and the health insurance carrier that, in most cases, the claims will be paid directly to the treating physician. Moreover, when a patient affirmatively agrees that the money should be paid directly to the physician, there can be no doubt that the contract between the patient and the insurance company is intended to benefit the physician. That is precisely what occurred here. When Abdel Wahed executed an authorization allowing Mega Life to pay plaintiff directly, plaintiff obtained all of Abdel Wahed's rights to collect the benefits under the policy. Plaintiff therefore has standing to proceed with this suit.

Having determined that plaintiff has standing, the next question to be addressed is whether Mega Life has complied with its obligations under the contract. I am satisfied that it has. When plaintiff became Abdel Wahed's assignee under the terms of the contract, his rights could rise no higher than Abdel Wahed's. *See Abeles v. Adams Eng'g. Co.,* 64 *N.J.Super.* 167, 187, 165 *A.*2d 555 (App.Div.1960) (stating that an assignee can have no greater rights than an assignor), *opinion modified,* 35 *N.J.* 411, 173 *A.*2d 246 (1961); *Brooklawn v. Brooklawn Hous. Corp.,* 129 *N.J.L.* 77, 28 *A.*2d 199 (E. & A.1942) (stating same). Therefore, all defenses

available against Abdel Wahed are available against his assignee, plaintiff Tirgan. *See Abeles, supra,* 64 *N.J.Super.* at 187, 165 *A.*2d 555. Mega Life made all of the payments it was obligated to make under the terms of the insurance contract. The fact that the payments were less than the physician's charges does not permit plaintiff to seek benefits under the insurance policy which were not purchased by Abdel Wahed. Abdel Wahed purchased a policy with a number of limitations in benefits. Payment for chemotherapy treatment was limited to $1,000 a day, doctor's visits could not exceed $60 per day, all charges were subject to the usual and customary charges in the marketplace, and there were deductibles and copayments. Although plaintiff argues in general terms that the payments made were less than what would normally be needed to cover the cost of chemotherapy treatment, Mega Life need not pay other than what was bargained for under the terms of the insurance contract. Abdel Wahed could have purchased a policy with additional benefits, but did not do so. Plaintiff is therefore limited under the terms of the policy to the payment schedule set forth therein for the various services rendered.

Plaintiff takes issue with the usual and customary charges established by Mega Life. However, plaintiff has submitted no evidence to support his allegations that Mega Life's payment limitations were unreasonable. The only evidence before the court as to the usual and customary charges are those established by Mega Life. The question of whether there exists a genuine issue of material fact precluding summary judgment requires the motion judge to consider the competent evidence submitted, viewed in the light most favorable to the nonmoving party, and to determine whether such materials are sufficient to permit a rational fact finder to resolve the disputed issue in favor of the nonmoving party. *Brill v. Guardian Life Ins. Co. of America,* 142 *N.J.* 520, 540, 666 *A.*2d 146 (1995). Plaintiff has submitted no evidence establishing a factual dispute over what charges were usual and customary for the chemotherapy treatment adminis-

tered to Abdel Wahed. The fact that plaintiff's charges were higher then those approved by Mega Life does not in itself create such a disputed issue of fact as is necessary to defeat a summary judgment motion.

I am satisfied that the proofs are so one sided that Mega Life must prevail as a matter of law. Summary judgment is therefore granted dismissing plaintiff's claim against Mega Life.