NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3587-22

WILLIAM J. FOCAZIO, M.D.,

       Plaintiff-Appellant,

and

ARTHUR ST. REALTY, LLC,
and ENDO SURGICAL CENTER
OF EAST BRUNSWICK, LLC,

       Plaintiffs,

v.

JOSEPH S. ABOYOUN, ESQ.,
and ABOYOUN & HELLER,
LLC,

       Defendants-Respondents,

and

NAGEL RICE, LLP, RANDEE
MATLOFF, ESQ., and BRUCE
NAGEL, ESQ.,

       Defendants.

_____

> APPROVED FOR PUBLICATION
>
> **February 24, 2025**
>
> APPELLATE DIVISION

Argued January 30, 2025 – Decided February 24, 2025

Before Judges Natali, Walcott-Henderson, and Vinci.

On appeal from the Superior Court of New Jersey, Law Division, Passaic County, Docket No. L-2643-16.

Kenneth S. Thyne argued the cause for appellant (Simon Law Group, LLC, attorneys; Kenneth S. Thyne, of counsel and on the briefs).

Adam J. Adrignolo argued the cause for respondents Joseph S. Aboyoun and Aboyoun & Heller, LLC (McElroy, Deutsch, Mulvaney & Carpenter, attorneys; Adam J. Adrignolo, of counsel; Daniel A. Malet, on the brief).

The opinion of the court was delivered by

VINCI, J.A.D.

Plaintiff William J. Focazio, M.D. appeals from the February 23, 2023 order granting defendants Joseph S. Aboyoun and Aboyoun & Heller, LLC's motion to dismiss for lack of standing and the June 27, 2023 order denying plaintiff's motions in limine without prejudice. We reverse the order granting defendants' motion to dismiss and affirm the order denying plaintiff's in limine motions.

I.

This legal malpractice action arises out of defendants' representation of plaintiff in the matter captioned Focazio v. Northeast Modular Homes, Inc. & George A. Tsairis Architects, P.C., No. PAS-L-2590-11 (the Tsairis lawsuit).

2

We summarize the facts underlying the Tsairis lawsuit to provide context for our decision in this case.

In December 2007, plaintiff purchased a residential property in Wayne for approximately $1,600,000. He initially intended to renovate the home located on the property but later decided to raze the structure and construct a new modular home.

Plaintiff hired George A. Tsairis Architects, P.C. (Tsairis) and its affiliated construction company, Northeast Modular Homes, Inc., to design and build the new home. He retained Aboyoun and his law firm, Aboyoun & Heller, LLC, to represent him in his contract negotiations with Tsairis.

Under his contract with Tsairis, plaintiff agreed to pay Tsairis approximately $2,300,000 for the project. He paid Tsairis deposits totaling $969,000. Approximately $400,000 was intended to be set aside by Tsairis to purchase a modular home. Tsairis allegedly paid the modular home manufacturer only $5,000 of that amount and retained the rest.

As required by the contract, Tsairis conducted a zoning study and opined the proposed construction would comply with local land development ordinances and no variances or waivers were needed. However, after Tsairis razed the existing home, the municipality stopped all work on the project

A-3587-22

because a required environmental protection waiver had not been obtained. The entire project was to be completed within 300 days of the "date of commencement," which was defined as the date on which all necessary permits were obtained. Because the permits were not obtained, work never "commenced" under the terms of the contract.

Aboyoun advised plaintiff he could cancel the contract because of the delay, but he would have to sue Tsairis to recoup the deposits he made. Aboyoun advised Tsairis plaintiff was canceling the contract and requested Tsairis return all amounts previously paid. Tsairis refused and blamed the delay on the project engineer plaintiff hired. Aboyoun began preparing for litigation with Tsairis and retained another attorney to help him prepare a complaint.

Before the complaint was finalized, plaintiff retained defendants Nagel Rice LLP, Randee Matloff, Esq., and Bruce Nagel, Esq. (collectively, Nagel) to represent him in the lawsuit against Tsairis. Aboyoun remained involved on plaintiff's behalf. Nagel prepared a new complaint, and Aboyoun approved it for filing. Plaintiff sought damages against Tsairis for breach of contract, breach of good faith and fair dealing, unjust enrichment, conversion, and consumer fraud.

In early 2012, plaintiff hired another attorney, George Abdy, Esq., and his firm, Abdy & Kane, P.C., to advise him on the litigation. Aboyoun and Nagel also remained as plaintiff's attorneys. By March 2013, plaintiff was in arrears in paying Nagel. In May 2013, the court granted Nagel's motion to be relieved as counsel, and Abdy and Matthew Cavaliere, Esq. of Cavaliere & Cavaliere, P.A., became counsel of record.

Abdy advised plaintiff that under the terms of the construction contract, the date of commencement of work did not begin until the final municipal permits and approvals were obtained, and the contract had been prematurely terminated. Abdy and Cavaliere advised plaintiff to resolve the matter through binding arbitration. In December 2016, the arbitrator ruled in favor of Tsairis, finding plaintiff improperly terminated the contract and ordered him to pay Tsairis $164,470, plus interest and counsel fees.

In July 2016, before the completion of arbitration, plaintiff retained a new attorney, who filed this legal malpractice action against Aboyoun and Nagel.[1] Among other things, plaintiff alleged Aboyoun failed to advise him of the pitfalls present in the contracts that required him to pay large deposits without

---

[1] Plaintiff's claims against Nagel were dismissed voluntarily prior to the entry of the order granting defendants' motion to dismiss.

A-3587-22

any guarantees work would progress at a reasonable pace. He contended Aboyoun should have included provisions in the agreements that would have allowed him to reclaim his payments in the event the project was cancelled. Plaintiff asserted Aboyoun incorrectly advised him he could cancel the contract with Tsairis even though the necessary municipal approvals had not been obtained. He sought damages exceeding $4,000,000.[2]

On October 19, 2017, plaintiff and Tsairis entered into a settlement agreement (the Tsairis Agreement) whereby plaintiff agreed to pay Tsairis a "Total Award" of $289,470 to satisfy the arbitration award. The Total Award included the initial arbitration award of $164,470, plus interest and counsel fees in the amount of $125,000.

The Tsairis Agreement included a payment schedule, and Tsairis agreed "[a]bsent an event of [d]efault, [it would] forebear from any actions/efforts to collect upon the . . . Total Award." The Tsairis Agreement included a "Security/collateral" provision that provides:

> Simultaneously with the execution . . . of the [Tsairis] Agreement, [plaintiff] shall deliver to [Tsairis] a Security Agreement . . . creating and otherwise

---

[2] The court previously granted summary judgment for defendants after barring plaintiff's experts' reports as impermissible net opinions. We reversed and remanded for additional discovery and a N.J.R.E. 104 hearing. Focazio v. Aboyoun, No. A-1249-19 (App. Div. June 7, 2021).

granting [Tsairis] a security interest in any and all of [plaintiff's] right, title and interest, in and to all money, directly or indirectly, recovered (i.e., settlement funds, collections on judgment, etc.), net of [plaintiff's] attorneys['] fees and litigation costs incurred for that action ("Net Settlement"), in [this malpractice action] . . . , upon the terms and conditions set forth in said Security Agreement in the amount and to the extent necessary to fully pay and satisfy all sums due [Tsairis] by [plaintiff] under this agreement.

The same day, plaintiff and Tsairis executed a Pledge and Security Agreement (the Security Agreement) as contemplated by the Tsairis Agreement. It provides:

WHEREAS, [plaintiff] is indebted to [Tsairis] in . . . sum of . . . $289,470 . . . (the "Loan"), as evidenced by a certain Settlement Agreement of even date herewith, which is incorporated herein by reference . . . .

. . . .

. . . [Plaintiff] and [Tsairis] hereby agree as follows:

1. Definitions. . . .

a. The term "Collateral" means:

I. Aboyoun. All of [plaintiff's] right, title and interest, in and to all money, directly or indirectly, recovered (i.e., settlement funds, collections on judgment, etc.), net of [plaintiff's] attorneys['] fees and litigation costs [i]ncurred for that action ("Net Settlement"), in . . . [this malpractice action] filed or about to be filed . . . , upon the terms and conditions set

7

forth herein . . . ; upon the receipt of the Net Settlement by [plaintiff's] Law Firm . . . , so much of the Net Settlement necessary to pay-off and satisfy the Loan shall be forthwith paid to [Tsairis] by [plaintiff's] Law Firm;

. . . .

b.   The term "Liabilities" means any and all obligations and indebtedness of every kind and description of [plaintiff] owing to [Tsairis] under the Security Agreement . . . .

. . . .

2.   Collateral Pledge.   [Plaintiff] hereby assigns, transfers and pledges to [Tsairis] and grants to [Tsairis] a continuing security interest in and lien on all of [plaintiff's] right, title and interest in and to the Collateral to secure the prompt payment, performance, satisfaction, and discharge of the Liabilities.

. . . .

4. Collateral & Default.  If [plaintiff] fails to make any payment to [Tsairis] in reduction of the Liabilities when due, [Tsairis] may seize, sell or otherwise dispose of any or all of the Collateral at any time and from time to time at public or private sale, upon issuance of prior written notice to [plaintiff], which, due to the nature of the Collateral and to the possibility of changes in value of the Collateral, [plaintiff] hereby acknowledges and agrees said notice to be sufficient, commercially reasonable, and proper, with or without advertisement of the sale, and may apply the proceeds of any such sale to the expenses of such sale, and/or to the Liabilities, in such order as [Tsairis] shall determine in its sole and absolute discretion.

8

. . . .

> 10. <u>Release of Collateral.</u> Upon [p]ayment and satisfaction in full of all Liabilities . . . , [Tsairis] shall release the Collateral . . . .

On March 8, 2022, plaintiff entered into an Acknowledgement of Attorney Charging Lien (the Law Firm Agreement) with Cavaliere & Cavaliere, P.A. and Abdy & Kane, P.C. (the Law Firms) in connection with their work on the Tsairis lawsuit. Plaintiff, defined in the agreement as "Client," agreed he "is indebted to the [Law Firms] for legal fees arising from said representation . . . for legal services rendered in that matter through August 2, 2017." He acknowledged the Law Firms "asserted an attorney's charging lien . . . upon any and all Client proceeds resulting from" this malpractice action.

Plaintiff "proposed that the [Law Firms] forebear from receiving and/or collecting the balance of said legal fees due . . . until resolution of [this malpractice action]." In exchange for their agreement to forebear, plaintiff agreed he "irrevocably acknowledges the creation of and/or otherwise creates an Attorney's Charging Lien in favor of the [Law Firms] and upon any and all of the Client's proceeds resulting from [this malpractice action]." As an element of damages in this case, plaintiff contends he owes the Law Firms $253,725.

9

## II.

Trial was scheduled for February 21, 2023. Plaintiff filed a motion in limine to preclude evidence relating to his prior bankruptcies, including the valuation of his practice in connection with the bankruptcies. Plaintiff also sought to preclude evidence of a 2012 complaint filed against him by an insurance company alleging insurance fraud. Defendants alleged that complaint resulted in financial difficulty for plaintiff that was relevant to the construction project underlying this case.[3]

On February 16, 2023, the court denied plaintiff's motion "without prejudice pending testimony at trial."[4] The court denied the motion to bar any mention of the insurance fraud matter without prejudice because plaintiff did not provide information sufficient to determine whether it should be excluded. It also denied plaintiff's motion to exclude evidence of plaintiff's prior bankruptcies without prejudice, finding "the bankruptcies may be relevant evidence and . . . the [c]ourt will find whether they are at the time they are

---

[3] Plaintiff also contends he orally moved to preclude evidence of the price of the home he subsequently purchased. The record on appeal does not include any evidence of that motion or the court's decision on the motion. We decline to consider arguments not properly raised on appeal. See Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973).

[4] The court did not enter an order adjudicating the motions until June 27, 2023.

introduced" at trial. The court noted, "all of these rulings are without prejudice subject to what happens during the course of trial . . . depending upon what comes out of the witnesses' mouths . . . on the stand."

On February 21, 2023, defendants filed a three-page "application seeking appropriate [relief] in light of plaintiff's impermissible assignment of his legal malpractice claims." They argued the Security Agreement and the Law Firm Agreement gave Tsairis and the Law Firms a pecuniary financial interest in the result of the malpractice action and "[a]part from the legal impermissibility of this assignment dynamic, such an arrangement places . . . [d]efendants in a prejudiced stance in light of the certain bias of a known integral witness to this litigation." They argued the "assignments are impermissible and as such, [p]laintiff's action should be dismissed with prejudice." The court permitted plaintiff to file a written response the following day. On February 22, the court heard oral argument on defendants' application.

On February 23, the court entered an order granting "defendants' motion to dismiss" supported by an oral opinion. The order provides "all claims by [p]laintiff . . . are dismissed for lack of standing as [p]laintiff assigned his interest in these matters to third parties." The court noted "tort claims cannot be assigned prior to judgment," but "[t]he language of the agreements at issue does

not indicate an assignment of any claims, but rather the assignment of future proceeds for judgment." It found "plaintiff makes a distinction without a difference between assigning a claim and pledging future proceeds."

The court continued:

> While there may be a syntactical and practical difference between the two, New Jersey courts have yet to rule on such. While current case law does not . . . delineate a distinction, the agreement may not clearly state that the third parties have a right to sue in their own name upon [plaintiff's] claim. The effect of the language remains the same. In the present matter, [plaintiff] is merely seeking a judgment that is to be paid directly to the third parties and thus, [plaintiff] will receive the benefit of the judgment in name only. In effect, the third parties would be able to sue upon [plaintiff's] claim based on the fact that they seek to recover an amount now owed to them. Such an arrangement clearly affects [plaintiff's] standing under Rule 4:26-1, which provides that, "[e]very action may be prosecuted in the name of a real party in interest."
>
> . . . .
>
> [Plaintiff's] stake in the present matter is essentially that of receiving a judgment to pay off his creditors, and the harm [plaintiff] will suffer in the event of an adverse decision is not one stemming from the alleged malpractice of defendants, but of not being able to pay his creditors. As a result, plaintiff's lack of standing as well as [plaintiff's] assignment of his claims, this [c]ourt must grant any motions to dismiss.

Immediately following the decision, the court discharged the jury.

12

On appeal, plaintiff argues: (1) he was deprived of due process; (2) the Security Agreement and the Law Firm Agreement do not constitute a prejudgment assignment of a chose in action; and (3) the court erred by denying his in limine motions.

III.

We review an order granting a motion to dismiss for lack of standing de novo. Courier-Post Newspaper v. Cnty. of Camden, 413 N.J. Super. 372, 381 (App. Div. 2010). Generally, contract interpretation is subject to de novo review. Kieffer v. Best Buy, 205 N.J. 213, 222 (2011). "Accordingly, we pay no special deference to the trial court's interpretation and look at the contract with fresh eyes." Id. at 223 (citing Manalapan Realty, LP v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

The court incorrectly determined plaintiff lacks standing because he improperly assigned his interest in this malpractice action to third parties. We reach this conclusion for two reasons. First, the court mistakenly found plaintiff assigned the entirety of his right of recovery in this action and "will receive the benefit of the judgment in name only." Second, the court incorrectly found an assignment of a future monetary recovery by an injured plaintiff in tort litigation is tantamount to an impermissible assignment of a tort claim to a third party.

## A.

Standing analysis begins with Rule 4:26-1, which provides, "[e]very action may be prosecuted in the name of the real party in interest." "Standing refers to the plaintiff's ability or entitlement to maintain an action before the court." N.J. Citizen Action v. Rivera Motel Corp., 296 N.J. Super. 402, 409 (App. Div. 1997) (citing N.J. State Chamber of Com. v. N.J. Election L. Enf't Comm'n, 82 N.J. 57, 67 (1980)). "Courts will not entertain matters in which plaintiffs do not have sufficient legal standing." Ibid. (citing In re Quinlan, 70 N.J. 10, 34 (1976)).

"New Jersey courts have taken a liberal approach to standing." Slater v. Holmdel Twp., 20 N.J. Tax 8, 11 (Tax 2002) (citing Dome Realty, Inc. v. City of Paterson, 150 N.J. Super. 448, 452 (App. Div. 1977)). "To possess standing in a case, a party must present a sufficient stake in the outcome of the litigation, a real adverseness with respect to the subject matter, and a substantial likelihood that the party will suffer harm in the event of an unfavorable decision." In re Camden Cnty., 170 N.J. 439, 449 (2002) (citing N.J. State Chamber of Com., 82 N.J. at 67-69).

Under the plain language of the Security Agreement and the Law Firm Agreement, plaintiff did not assign his malpractice claim to third parties.

14

Rather, he assigned to Tsairis and the Law Firms a limited portion of his anticipated recovery in the action, after first using the proceeds to pay his own legal costs and attorneys' fees, to satisfy amounts he owed to those third parties.

When contractual terms are clear, courts "must enforce the contract as written." Graziano v. Grant, 326 N.J. Super. 328, 342 (App. Div. 1999). "The document must be read as a whole, in 'accord with justice and common sense.'" Cumberland Cnty. Imp. Auth. v. GSP Recycling Co., Inc., 358 N.J. Super. 484, 497 (App. Div. 2003) (quoting Krosnowski v. Krosnowski, 22 N.J. 376, 387 (1956)). The contract "should not be interpreted to render one of its terms meaningless." Ibid.

In the Security Agreement, plaintiff pledged as collateral a portion of his anticipated recovery in this action to secure payment of $289,470 he owes Tsairis pursuant to the Tsairis Agreement. The Security Agreement provides plaintiff "assigns, transfers and pledges to [Tsairis] . . . a continuing security interest in and lien" on his "right, title and interest in and to the Collateral." It defines "Collateral" to mean plaintiff's "right, title and interest, in and to all money, directly or indirectly, recovered (i.e., settlement funds, collections on judgment, etc.), net of [plaintiff's] attorneys['] fees and litigation costs . . . (Net Settlement)." It continues, "upon the receipt of the Net Settlement by

[plaintiff's] Law Firm . . . , so much of the Net Settlement necessary to pay-off and satisfy the Loan shall be forthwith paid to [Tsairis] by [plaintiff's] Law Firm."

As the court correctly acknowledged, the Security Agreement "does not indicate an assignment of any claims." Rather, it expressly and clearly limits the assignment to plaintiff's "right, title and interest, in and to <u>all money</u>, directly or indirectly, <u>recovered</u>" in this malpractice action. (emphasis added). Nothing in the Security Agreement gives a third party the right to pursue any claims held by plaintiff, and it is undisputed plaintiff is prosecuting this malpractice action in his own name.

The Security Agreement creates an obligation by plaintiff to pay Tsairis $289,470 from his recovery in this action, after first satisfying plaintiff's own litigation costs and attorneys' fees. Importantly, and contrary to the court's finding, under the Security Agreement, the first recipients of any portion of the recovery are plaintiff and his lawyers, not third parties. Only after plaintiff is made whole for his costs and attorneys' fees will Tsairis be entitled to recover any portion of the proceeds. Therefore, the court's finding that plaintiff is "merely seeking a judgment that is to be paid directly to the third parties" is incorrect. He stands to benefit directly and substantially from the judgment; he

16

will not "receive the benefit of the judgment in name only" as the court mistakenly found.

Likewise, the Law Firm Agreement merely creates a lien against his personal recovery in this action in exchange for the Law Firms' agreement to forebear collection of the fees they are owed until resolution of this action. Nothing in that agreement could possibly be construed as an assignment of a tort claim, nor could it be interpreted to create a lien for more than the $253,725 plaintiff owes in fees.

In addition, plaintiff seeks an award in excess of $4,000,000 in this action. He owes Tsairis $289,470 and the Law Firms $253,725. To the extent his recovery, after paying his own costs and attorneys' fees, exceeds the total amount he owes Tsairis and the Law Firms, he will also retain the excess amount recovered. The Security Agreement expressly provides Tsairis "shall release the Collateral" upon satisfaction of plaintiff's liability under the Tsairis Agreement, and the Law Firm Agreement only creates a lien in the amount plaintiff owes the Law Firms. Any amount recovered above the amounts owed to Tsairis and the Law Firms will be retained by plaintiff.

We are not persuaded by defendants' argument Tsairis' right under the "Collateral & Default" provision of the Security Agreement to "sell or otherwise

dispose of any or all of the Collateral" in the event of default means plaintiff assigned the tort claim. The Security Agreement defines "Collateral" as monies recovered in this action, net of plaintiff's costs and fees. When interpreting a contract, it "must be read as a whole, in 'accord with justice and common sense'" and not as "to render one of its terms meaningless." Ibid. (quoting Krosnowski, 22 N.J. at 387). Interpreting this provision of the Security Agreement to essentially redefine the term "Collateral" would contradict the overall intent of the Security Agreement when read as a whole and would render the definition of the term "Collateral" meaningless.

The court incorrectly found plaintiff lacked standing to bring this action. He remains the real party in interest and possesses a sufficient stake in the outcome of the litigation to establish standing.

### B.

We also conclude the assignment of the future proceeds of a tort action is permissible when the injured plaintiff continues to prosecute the action in their own name and has standing to do so.

It has long been the rule in New Jersey that a tort claim cannot be assigned prior to judgment. Vill. of Ridgewood v. Shell Oil Co., 289 N.J. Super. 181, 195 (App. Div. 1996) (citing E. Orange Lumber Co. v. Feiganspan, 120 N.J.L.

410, 413 (Sup. Ct. 1938), aff'd, 124 N.J.L. 127 (E. & A. 1940)).  It is undisputed a legal malpractice claim is a tort claim.  Grunwald v. Bronkesh, 131 N.J. 483, 492 (1993).  There is also no dispute a judgment can be assigned after the judgment is entered.  Pursuant to N.J.S.A. 2A:25-1, "all judgments and decrees recovered in any" court "shall be assignable, and the assignee may sue thereon in their own name."

However, an assignment limited to the anticipated proceeds of a tort claim, as opposed to the tort claim itself, is permissible so long as the injured person prosecutes the action in their own name and has standing to do so.  See Cronin v. McKim-Gray, 353 N.J. Super. 127, 131 (App. Div. 2002) (permitting assignment of anticipated recovery in tort claim to satisfy outstanding medical bills); Ladenheim v. Klein, 330 N.J. Super. 219, 223 (App. Div. 2000) (permitting creation of an equitable lien against anticipated recovery in tort claim to satisfy outstanding medical bills); Berkowitz v. Haigood, 256 N.J. Super. 342, 347 (Law Div. 1992) (permitting assignment of anticipated recovery in tort claim to satisfy outstanding medical bills).

Defendants' reliance on Village of Ridgewood is misplaced.  289 N.J. Super. at 181.  There, Ridgewood sued several oil companies and other defendants for damages resulting from contamination of drinking-water wells.

19

Id. at 186. Ridgewood settled with the oil companies, accepted a settlement payment "in full settlement of the claims," and released the oil companies from liability. Id. at 188.

As a part of the settlement, Ridgewood assigned to the oil companies "all its legal rights against all parties potentially responsible for the well contamination." Id. at 187. The agreement provided, "[u]nder the assignment . . . from Ridgewood, the litigation will proceed in the name of Ridgewood but with the proceeds of any judgment going to the [o]il [c]ompanies." Ibid. Under those circumstances, we held the assignment of Ridgewood's tort claims was impermissible because "[i]t has always been held that the right to bring an action in the courts of this state is possessed by the injured person alone, unless the injured person assigns [their] right to someone else, which cannot be done before judgment when the action sounds in tort." Id. at 196 (first alteration in original) (quoting U.S. Cas. Co. v. Hyrne, 117 N.J.L. 547, 552 (E. & A. 1937)).

Defendants' reliance on Alcman Services Corp. v. Bullock, P.C., 925 F. Supp. 252 (D.N.J. 1996) is unavailing for the same reasons. There, the parties to an underlying action attempted to assign to Alcman a "cause of action for attorney malpractice" against Bullock. Id. at 256. Alcman then sued Bullock

as assignee of the third-party's malpractice claim. Ibid. The court held the assignment of a cause of action for legal malpractice to a third party was impermissible under New Jersey law. Id. at 260.

Here, plaintiff is prosecuting this action in his own name, retains control over the litigation, and stands to recover a significant portion of any damages award. The limited assignments in this case are not the equivalent of an assignment of a tort claim and do not run afoul of the prohibition on assignment of tort claims prior to judgment.

Defendants' claim public policy favors affirming the court's dismissal of the action is not convincing. They argue "[t]here is . . . an implicit bias at issue that would have been highly prejudicial to" them because Abdy and Tsairis "were going to be essential fact witnesses." According to defendants, this would have "resulted in an impermissible and unethical bias" and "a denial of due process." To the extent the witnesses' personal interests are implicated by their involvement in the litigation, defendants are free to explore any alleged bias on cross-examination.

Defendants' argument the assignments violate Rule of Professional Conduct 3.4(b) lacks merit. RPC 3.4(b) provides "a lawyer shall not . . . offer an inducement to a witness that is prohibited by law." The agreements in this

case are not offers of "inducement" for Tsairis and Abdy to testify, nor are they improper agreements to compensate fact witnesses.

C.

We apply "an abuse of discretion standard to [discovery] decisions made by [the] trial courts." C.A. ex rel. Applegrad v. Bentolila, 219 N.J. 449, 459 (2014) (second alteration in original) (quoting Pomerantz Paper Corp. v. New Cmty. Corp., 207 N.J. 344, 371 (2011)). "[W]e accord substantial deference to a trial court's disposition of a discovery dispute." Brugaletta v. Garcia, 234 N.J. 225, 240 (2018). Further, appellate courts "will not ordinarily reverse a trial court's disposition of a discovery dispute 'absent . . . a judge's misunderstanding or misapplication of the law.'" Ibid. (quoting Cap. Health Sys., Inc. v. Horizon Healthcare Servs., Inc., 230 N.J. 73, 79-80 (2017)).

The court denied plaintiff's motions to exclude evidence without prejudice. It determined plaintiff did not provide information sufficient to determine whether the evidence should be excluded, and it would be in a better position to evaluate the admissibility of the evidence after hearing relevant witness testimony. We do not perceive any basis to disturb the court's decision.

D.

We must address the procedure employed by the court in addressing defendants' "application" for appropriate relief to provide guidance on how courts should handle this issue should it arise again in other cases. Plaintiff's counsel was engaged in jury selection and preparing for trial when he was unexpectedly served with an untimely and inappropriate "application" to dismiss the case. The application could not be filed and considered as a motion in limine because it was dispositive. R. 4:25-8(a)(1). Nor was it filed timely or appropriately as a motion to dismiss in accordance with Rules 1:6-3 and 4:6-3. Although it is true lack of standing cannot be waived, Petro v. Platkin, 472 N.J. Super. 536, 558 (App. Div. 2022) (citing N.J. Dep't of Env't Prot. v. Exxon Mobil Corp., 453 N.J. Super. 272, 291 (App. Div. 2018)), that does not mean the defense can be asserted without regard for the Rules of Court.

Rather than adjourn the trial or otherwise fashion an appropriate remedy, the court required counsel to file written opposition and participate in oral argument the following day, while simultaneously delivering his opening statement and presenting plaintiff's testimony. The next day, the court dismissed plaintiff's case and discharged the jury. Although we appreciate the court's efforts to resolve this issue on short notice, plaintiff and his counsel deserved a

fair opportunity to oppose defendants' untimely and procedurally deficient application.

### E.

Finally, considering the facts and circumstances of the case, we direct the Presiding Judge of the Civil Part to assign this case to a different judge on remand. See Graziano, 326 N.J. Super. at 350 (stating the power to remand a case to a different judge "may be exercised when there is a concern that the trial judge has a potential commitment to [their] prior findings"); see also Freedman v. Freedman, 474 N.J. Super. 291, 308 (App. Div. 2023) (remanding a matter to a different judge as the same judge "may have a commitment to [their] prior findings").

Reversed in part and affirmed in part. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3587-22